**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF MYRA SUE LOWRY | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:23-cv-325-HSO-RPM |
| | § | |
| STATE FARM FIRE AND | § | |
| CASUALTY COMPANY | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
MOTION [35] FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANT'S MOTION [33] TO STRIKE WILLIAM SEALY**

Defendant State Farm Fire and Casualty Company ("State Farm") moves for summary judgment in this insurance coverage dispute on grounds that Plaintiff Estate of Myra Sue Lowry (the "Estate") lacks expert testimony on both causation and depreciation necessary to establish that it failed to fully compensate for damage to the Estate's property caused by Hurricane Zeta. Mem. [36]. In the alternative, State Farm seeks partial summary judgment on the Estate's claims for bad faith and extra-contractual damages. *Id.* The Court finds that State Farm's Motion [35] for Summary Judgment should be granted. State Farm's separate Motion [33] to Strike the Estate's expert witness will be denied as moot.

I. <u>BACKGROUND</u>

A.  <u>Factual background</u>

Myra Sue Lowry, now deceased, owned a residence located at 1600 Wisteria Street, Gulfport, Mississippi, (the "Property") which was allegedly damaged by Hurricane Zeta in October 2020. Compl. [1-1] at 2. At the time of the storm, the Property was insured by a homeowners insurance policy issued by State Farm, bearing policy number 24-B7-9066-5 (the "Policy"). *See* Ex. B to Mot. [35].

Relevant here, the Policy insured against "accidental direct physical loss" to both the "dwelling" and "personal property[,]" unless the loss was specifically excluded. *See id.* at 21. Under the "Loss Settlement" provision, calculating the reimbursement amount for loss or damage to the dwelling required a determination of whether the damaged property has been repaired. *See id.* at 27. If "the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [the insured] actually and necessarily spen[t] to repair or replace the damaged part of the property[.]" *Id.* But if the damaged dwelling property has not been repaired or replaced, State Farm "will pay only the ***actual cash value*** of the damaged part of the property[.]" *Id.* (emphasis in original). The term "actual cash value" bears an important and specific definition—it means:

> the value of the damaged part of the property at the time of the loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for *pre-loss depreciation*. For this calculation, all components of this estimated cost including, but not limited to:
>     a.  materials, including any tax;
>     b.  labor, including any tax; and
>     c.  overhead and profit;
>     are *subject to depreciation*.
> The depreciation deduction may include such considerations as:
>     a.  age;
>     b.  condition;
>     c.  reduction in useful life;
>     d.  obsolescence; and
>     e.  any pre-loss damage including wear, tear, or deterioration;
>     of the damaged part of the property.

*Id.* at 10 (emphasis added).

So, in sum, if dwelling damage has been repaired, State Farm covers the repair cost, up to the liability limit. *Id.* at 27. And if the dwelling damage has not

yet been repaired, State Farm reimburses for the actual cash value—after accounting for depreciation. *Id.* Personal property reimbursement works similarly, and until it has been repaired or replaced, State Farm pays only the actual cash value. *Id.* at 28. After repair or replacement is completed, State Farm pays the difference between the actual cash value and the amount "actually and necessarily" spent to repair or replace. *Id.*

On March 4, 2021, Myra Sue Lowry, with the assistance of her daughter, Lisa Dedeaux, filed a claim for damages caused by Hurricane Zeta.[1] *See* Ex. A to Mot. [35]. Lowry claimed various damages both to the dwelling and to her personal property. *See id.* at 16. For the dwelling, the claim included damage to the roof, garage roof, porch, front door, garage door, gutters, downspouts, garage windows, garage plexiglass, and garage ceiling. *See id.* The claim included property damage claims for clothing, a sofa, a chair, and to approximately $400 worth of spoiled food. *See id.;* Ex. F to Mot. [35]. Prior to filing its claim, the Estate had repaired the garage door, a window, and the garage gutters. *See* Mem. [36] at 15; Ex. C to Mot. [35] at 8-9. The Estate made no other repairs to the Property, and based upon the record all other claimed loss or damage remains unrepaired. *Id.*

On March 26, 2021, State Farm inspected the Property and produced an estimate and summary of loss including a total cost value of $5,105.35 after depreciation—an amount less than the $6,945.00 deductible. *See* Ex. I to Mot. [35].

---

[1] Myra Sue Lowry owned the Property and held the applicable insurance policy at the time of Hurricane Zeta in October 2020. Upon Mrs. Lowry's death in 2022, her daughter, Lisa Dedeaux, was appointed administratrix of Lowry's estate. Mem. [32] at 2. And in October 2023 Dedeaux filed this lawsuit on behalf of the Estate.

3

The Estate responded with an estimate from Exact Building Consultants, Inc. ("EB Consultants") which estimated the total replacement cost for the damages to the dwelling as $169,370.15. *See* Ex. L to Mot. [35] at 11. That estimate appears to include some damage not listed in State Farm's estimates, such as mold damage and cracks in the home's exterior brick veneer. *See id.* The Estate, through counsel, demanded payment of the full amount set forth in the EB Consultants estimate, and demanded an appraisal. *See* Ex. M, O to Mot. [35]. State Farm denied the appraisal request. *See* Ex. P to Mot. [35].

In February 2023, State Farm conducted another inspection and produced a revised and final estimate and summary of loss, which included a total of $6,705.02 in dwelling damage, $400.00 in food loss, and $1,284.00 in replacement costs for the damaged couch and chair. *See* Ex. U to Mot. [35]. State Farm denied coverage for the clothing because Mrs. Lowry had disposed of it before filing her claim. *See* Mem. [36] at 19. After applying depreciation, the total amount payable in the final estimate amounted to $6,239.17, which was still less than the deductible. *See id.* In April 2023 the Estate sent State Farm a second appraisal request, *see* Ex. V to Mot. [35], which State Farm rejected, *see* Mem. [36] at 6.

B.    Procedural history

Plaintiff filed suit in the Circuit Court of Harrison County, Mississippi, on October 25, 2023, advancing claims against State Farm for breach of contract, bad faith, and extra-contractual damages. Compl. [1-1]. State Farm removed the case to this Court, invoking federal diversity jurisdiction. *See* Notice [1].

4

In May 2024, the Estate designated a structural engineer named William Sealy as an expert witness to testify to the type and extent of damage to the Property and as to "whether Hurricane Zeta caused the damage." Ex. Y to Mot. [35] at 2. Defendant has filed a separate Motion [33] to Strike Sealy's testimony, which remains pending. Importantly, Sealy's testimony appears to relate only to the extent of the damage and whether Hurricane Zeta caused that damage; he does not purport to opine on depreciation. *See* Ex. BB to Mot. [35]; *see also* Ex. AA to Mot. [35] (Sealy testifying that he did not offer opinions on depreciation, actual cash value, or replacement cost value). And the Estate concedes that it "did not designate Mr. Sealy as an expert to offer opinions on depreciation." Resp. [41] at 4. To date, the Estate has not designated any expert to testify on the subject of depreciation.

On August 20, 2024, State Farm filed the present Motion [35] for Summary Judgment, or alternatively, for partial summary judgment. *See* Mot. [35]; Mem. [36]. State Farm insists that Plaintiff lacks expert testimony on causation and depreciation, warranting summary judgment on the contractual claims. *See* Mem. [36] at 9. And even if summary judgment is not warranted on the coverage question, State Farm argues that it acted in good faith, warranting partial summary judgment on the claims for punitive and extra-contractual damages. *See* *id.* at 9-10.

In its response brief, Plaintiff concedes that summary judgment is warranted as to: (1) all extracontractual and punitive damages, Mem. [41] at 5; (2) its claims

for damage to the Property's brick veneer, *id* at 4; (3) its claims for mold damage, *id*.; and (4) "[a]side from the replacement cost value already offered by State Farm for the couch damage once replacement occurs, and the food costs already paid in full, the Estate does not intend to pursue its claim for the . . . clothing[,]" *id.* at 5. Therefore, all that remains for resolution at the summary judgment stage is the Estate's contractual claim for additional compensation for all unconceded damages to the dwelling and personal property.  Those unconceded damages include all unrepaired and repaired damages to the dwelling listed in the EB Consulting estimate, except for the brick veneer and any mold damage.  *See* Ex. L to Mot. [35]. The unconceded damages also include personal property damage to the sofa, chair, and spoiled food—all of which were included in State Farm's estimates, *see* Ex. J to Mot. [35], and for which the reimbursement amounts do not appear to be in dispute, *see* Mem. [41] at 5.

The Estate argues their remaining claims for additional compensation under the Policy survive summary judgment because "there is a dispute of a material fact as to whether the Estate lacks causation testimony, and Mr. Sealy [is] qualified to provide expert testimony and opinions on the matter."  Mem. [41] at 3.  On the question of depreciation, the Estate concedes that it lacks expert testimony, but it nonetheless claims that "Exact Building Consultant's . . . estimate contains factual observations that present genuine issues of material fact that will assist the fact finder [sic] in its decision process regarding actual cost of the unrepaired items."  *Id.* at 4.

6

In reply, State Farm renews its argument that "[w]ithout expert testimony on depreciation, the Estate cannot prove the actual cash value for items that remain unrepaired, warranting summary judgment for State Farm." *Id.* And, because the Estate presents no genuine dispute of material fact as to their contents claim (the sofa, chair, and spoiled food), State Farm argues it is entitled to summary judgment on that claim as well. *Id.* at 4.

## II. <u>DISCUSSION</u>

A. <u>Relevant legal authority</u>

1. <u>Summary judgment standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant carries its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately

substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

A court views all evidence in the light most favorable to the nonmovant and draws all reasonable inferences in its favor. *Id.* But if the nonmovant cites evidence that "is merely colorable, or is not significantly probative," summary judgment may nevertheless be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citations omitted).

2.    Interpretation of insurance policies

Where, as here, the Court exercises subject-matter jurisdiction under 28 U.S.C. § 1332, state law applies.[2] "Under Mississippi law, the plaintiff bears the burden of proving his right to recover under an insurance policy." *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007). "[T]his basic burden never shifts from the plaintiff." *Garrison Prop. and Cas. Co. v. Silva*, 652 F. App'x 240, 241 (5th Cir. 2016) (quoting *Britt v. Travelers Ins. Co.*, 566 F.2d 1020, 1022 (5th Cir. 1978)); *see also Taylor v. Ins. Co. of N. Am.*, 263 So. 2d 749, 751 (Miss. 1972).

In construing an insurance policy, a court must "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n.*, 20 So. 3d 601, 609 (Miss. 2009) (quotations and citations omitted). "In

---

[2]  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Mississippi, insurance policies[] are contracts, and as such, they are to be enforced according to their provisions." *Id.* (quotation omitted).

The key issue in this case is whether Defendant owes any additional insurance proceeds to the Estate as policyholder. *See Thomas v. Nationstar Mortg., LLC*, No. 2:22cv88-HSO-LGI, 2023 WL 2780360, at *9 (S.D. Miss. Feb. 6, 2023) (citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-cv-175-KS-MTP, 2015 WL 4915701, at *16 (S.D. Miss. Aug. 18, 2015)). "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012) (quoting *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)). "Without proof of actual monetary damages, a plaintiff cannot recover *compensatory* damages under a breach-of-contract action." *Id.* (emphasis in original).

B.    <u>Analysis</u>

1.    <u>State Farm is entitled to summary judgment as to any unrepaired items</u>

In order to survive summary judgment on its breach-of-contract claim, the Estate must point to specific evidence demonstrating a genuine issue of material fact as to the amount of damages it is owed under the Policy. *See Little*, 37 F.3d at 1075. For unrepaired items, the Policy requires a calculation of "actual cash value," which requires a calculation for depreciation. *See* Policy [35-2] at 10, 27. Courts generally require expert testimony to establish depreciation. *See, e.g., Jackson v. State Farm Fire and Cas. Co.*, 1:23-cv-24-HSO-BWR, 2024 WL 1183670, at *6 (S.D.

9

Miss. Mar. 19, 2024) ("[C]ourts generally require expert testimony to establish depreciation."); *Pace v. State Farm Fire and Cas. Co.*, 2:23-cv-19-KS-BWR (S.D. Miss. June 24, 2024) (stating the same); *Penthouse Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 1:07CV568 LTS-RHW, 2009 WL 617914, at *1-2 (S.D. Miss. Mar. 11, 2009) (explaining that damage valuation, including calculation of replacement cost value, actual cash value, and depreciation in a property insurance dispute requires expert testimony).

But, as discussed, the Estate has not designated an expert to establish depreciation. As to any unrepaired items, then, it is unable to "put into evidence, with as much accuracy as possible, proof of the damages being sought[,]" *Bus. Commc'ns*, 90 So. 3d at 1225 (quotations omitted), nor can it demonstrate a genuine dispute of material fact on this issue. Although the Estate claims that EB Consulting's estimate "contains factual observations that present genuine issues of material fact[,]" Resp. [41] at 4, the Estate did not designate EB Consulting as an expert witness on depreciation, nor does EB Consulting appear to opine on depreciation in any way. *See* Resp. [41] at 4; *see also* Ex. L to Mot. [35]. Accordingly, State Farm is entitled to summary judgment as to any unrepaired damage to the Property.

2.     State Farm is entitled to summary judgment as to any repaired items

Summary judgment is also warranted as to the repaired items because the parties do not appear to dispute the amount owed for those items. According to Lisa Dedeaux in her deposition, the only repaired items were the garage door, an attic

window, and the garage gutters. *See* Ex. C to Mot. [35] at 8-9. State Farm claims

that it included these repaired items in its estimates, *see* Mem. [36] at 15; Ex. T to

Mot. [35], and it argues that the Estate has not demonstrated that additional

payments for those repaired items are owed, *see* Mem. [36] at 15. The Estate, for its

part, does not even mention—let alone dispute—whether State Farm included the

repaired items in its estimates or how much it is owed for the repaired items under

the Policy. Therefore, the Court finds there is no genuine dispute between the

parties as to the amount owed for the repaired items under the policy. Accordingly,

summary judgment is warranted as to any repaired items.

3.    <u>State Farm is entitled to summary judgment as to the Estate's contents claim</u>

        Summary judgment is also warranted on the Estate's "contents" claim

because the parties do not appear to dispute the amount owed for the damaged

items of personal property. The Estate originally identified three items of damaged

personal property: (1) a sofa and chair; (2) spoiled food; and (3) clothing. *See* Ex. F

to Mot. [35]. For the sofa and chair, State Farm estimated a replacement cost value

of $1,284.00 and an actual cash value of $642.00. *See* Ex. K to Mot. [35]. To date,

the Estate has not yet replaced the sofa or chair. *See* Mem. [41] at 4. For the

spoiled food, State Farm estimated a replacement cost of $400.00 and included that

amount in its estimate. *See* Ex. I to Mot. [35]. As for the clothing, the Estate

explained it "does not intend to pursue its claim for the remainder of the contents

damage claimed, i.e. the clothing . . . . Therefore, the Estate concedes to State

Farm's argument . . . ." Mem. [41] at 4-5.

Although the Estate first states in its Response that State Farm is "not entitled to summary judgment" on the contents claims, it goes on to explain that "[a]side from the replacement cost value already offered by State Farm for the couch damage once replacement occurs, and the food costs already paid in full, the Estate does not intend to pursue its claim for the remainder of the contents damage claimed . . . ." *Id.* This indicates that the Estate is satisfied with the reimbursement amounts offered by State Farm for both the furniture and the spoiled food, such that there remains no genuine dispute between the parties as to the amount owed on the contents claim. The Court will grant summary judgment on this issue.

4.    <u>State Farm is entitled to summary judgment as to the remaining claims</u>

The Estate "concedes to partial summary judgment on [the] extracontractual and punitive damages and withdraws its claims as such." *Id* at 5. Accordingly, the Court will grant summary judgment on the claims for bad faith and for punitive and extracontractual damages.

5.    <u>State Farm's Motion [33] to Strike the Estate's expert witness is moot</u>

Because the Court will grant the current Motion [35] for Summary Judgment, it need not resolve State Farm's separate Motion [33] to Strike the Estate's expert witness, and that Motion [33] is rendered moot.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [35] for Summary Judgment is **GRANTED**, and Plaintiff's claims in the Complaint [1-1] are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [33] to Strike William Sealy is **MOOT**. The court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED** this the 17th day of December, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE